IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH J. KOTOFSKI, JR.          *

v.                               *    CIVIL No. SKG-09-981

MICHAEL ASTRUE,                  *
Commissioner
Social Security Administration   *

## MEMORANDUM OPINION

Plaintiff, Joseph J. Kotofski, by his attorney, Lawrence P. Demuth, filed this action for judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Social Security Administration ("SSA"), which denied Mr. Kotofski's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 401–434.

Currently pending before the Court are cross motions for summary judgment. (Papers No. 13, 21, 28). No hearing is necessary in this case. See Local Rule 105.6. For the reasons discussed below, this Court **DENIES** Mr. Kotofski's motion for summary judgment and **DENIES** the government's motion, but **REMANDS** the case to the Commissioner for proceedings consistent with this opinion.

## I. Procedural History

Mr. Kotofski protectively filed for DIB on October 7, 2005. (R. 94). SSA denied Mr. Kotofski's application at the initial

1

(R. 36) and reconsideration levels (R. 30, 33).  A hearing was held on July 2, 2008 before ALJ Douglas R. Due, who issued a written decision on January 27, 2009 determining that Mr. Kotofski was not disabled within the meaning of the Act.  (R. 12-18).  The Appeals Council denied Mr. Kotofski's application for review, making the ALJ's opinion the final decision of SSA. (R. 5-7).  Mr. Kotofski now seeks review of this decision.  <u>See</u> (Paper No. 1).

## II.  Factual Background

The Court has reviewed the government's Statement of Facts and adopts it, subject to the following supplementation and correction:

The government's recitation of the evidence of Mr. Kotofski's abilities to lift, sit, stand, walk, drive, and perform chores are accurate as of 2006.  <u>See</u> (Paper No. 21).[1] Mr. Kotofski's abilities markedly decreased, however, by the time Dr. Saluja reevaluated Mr. Kotofski in August 2008.  <u>See</u> <u>generally</u> (R. 141-55).  There, Dr. Saluja noted that Mr. Kotofski's impairments limited him to sitting for one hour, standing for 30 minutes, and walking for 20 minutes in an eight

---

[1] According to a May 15, 2006 letter from Dr. Kwabena Osei-Boateng, "[Mr.] Kotofski stated in May 2006 that he could 'lift up to 50 pounds,' 'sit for about 5 to 6 hours,' 'stand at one time for about half an hour,' and 'walk on level ground for about 6 blocks' [R. 100]. [Mr.] Kotofski stated that he could "drive for about an hour at a stretch" and that he performed some household shores, such as sweeping, cooking, washing dishes, and mowing the grass [R. 100]."  (Paper No. 21).

hour workday. (R. 148). Additionally, while Dr. Saluja found adequate reaching ability, she found that Mr. Kotofski should use foot controls only occasionally, should never climb a ladder, should avoid heights, moving machinery or driving a car, but that he could kneel, crouch, or stoop and tolerate an office atmosphere. (R. 149-51). Finally, by the time of the hearing, nearly two years after filing his initial claim, Mr. Kotofski reported that his girlfriend performed all of the chores that the government says Mr. Kotofski does himself.[2] (R. 168).

## III. ALJ Findings

In evaluating Mr. Kotofski's claim for disability under the Act, the ALJ must consider the entire record and follow the sequential five step evaluation process outlined in 20 C.F.R. § 404.1520(a). The ALJ, upon completion of the five steps, concluded that Mr. Kotofski was not disabled under the Act because there were a sufficient number of jobs in the national economy that Mr. Kotofski could have performed given his Residual Functional Capacity ("RFC") to perform the full range of sedentary work as defined in federal regulations though he

---

[2] Q [ALJ]: Now does she [Mr. Kotofski's live-in girlfriend] do the cooking?
A [Mr. Kotofski]: Mainly.
Q: And how about the cleaning?
A: She does that.
Q: Does she do the shopping?
A: Yes.
Q: Grocery shopping?
A: Yes. (R. 168).

was unable to resume his prior duties as a longshoreman or checker. (R. 15, 17).

At step one, the claimant must prove that he is not engaged in "substantial gainful activity" ("SGA").[3] 20 C.F.R. § 404.1520(a)(4)(i). If the claimant earns more than the amount specified in the regulations, then the claimant is presumed to have the capacity to engage in SGA, is not disabled, and the inquiry ends. 20 C.F.R. § 404.1574(b)(2)–(3). In this case, ALJ Due determined that Mr. Kotofski had not engaged in SGA since September 30, 2003 (R. 14), presumably because he did not meet the income requirements in the federal regulations. (R. 13). See 20 C.F.R. § 404.1574(b)(2)(ii) (explaining the formula calculations to determine income requirements).

Having found that Mr. Kotofski had not engaged in SGA during the relevant period, ALJ Due proceeded to the second step of the process. At this step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or combination of impairments affecting his ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). The impairment must last, or be expected to last, at least twelve

---

[3] SGA is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Working part-time, for less money, or having less responsibilities than before constitutes "substantial" activity. § 404.1572(a). Any work done for pay or profit, even if none is realized, is "gainful." § 404.1572(b). Household tasks or taking care of oneself is not "substantial and gainful." § 404.1572(c). The primary consideration of the ALJ is the income derived from any and all employment. 20 C.F.R. § 404.1574(a)(1).

consecutive months. 20 C.F.R. § 404.1509. ALJ Due found that
Mr. Kotofski had several severe medically determinable
impairments including neuropathies of the feet, diabetes
mellitus, ankle pathology, and back pathology. (R. 14).

After finding severe medically determinable impairments,
ALJ Due moved to the third step of the analysis. (R. 14). The
third step requires the ALJ to determine whether those severe
impairments meet the requirements listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1; § 404.1520(d). If the impairments meet
the requirements listed in the Appendix, then the claimant is
disabled under the statute. § 404.1520(d). ALJ Due evaluated
Mr. Kotofski's diabetes under Listing 9.08 and ankle pain and
numbness under Listing 11.4 for peripheral neuropathies. Both
listings required that Mr. Kotofski exhibit "significant and
persistent disorganization of motor function in two extremities
resulting in sustained disturbance of gross and dexterous
movements, or gait and station." (R. 14). See also, 20 C.F.R.
Part 404, Subpart P, Appendix 1, Listings 9.08, 11.14, and 11.4.
Because Mr. Kotofski could "bear full weight on both legs and
ambulate[] without a cane or other support," ALJ Due concluded
that Mr. Kotofski did not satisfy any of the Appendix 1
impairments. (R. 14).

ALJ Due then moved to the intermediary step of determining
Mr. Kotofski's Residual Functional Capacity ("RFC"). (R. 15).

The RFC is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. § 404.1545(a)(4)(e). To determine RFC, the ALJ assesses the claimant's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. See also § 404.1545(a)–(e). The ALJ considers the entire record, including medical and opinion evidence, and impairments that are not severe. 20 C.F.R. § 404.1545(a)(2)–(3). Based on several physician reports and Mr. Kotofski's testimony, ALJ Due concluded Mr. Kotofski could perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)[4] because in 2006 Mr. Kotofski reported an ability to sit for five or six hours, to stand at one time for 30 minutes, and to lift 50 pounds. (R. 15, 17).

At the fourth step, the ALJ considers whether the plaintiff retains the RFC to perform past relevant work. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, then he is not disabled. 20 C.F.R. § 404.1520(f). ALJ Due found that Mr. Kotofski could not perform his past jobs of longshoreman or checker any longer because of his documented ankle impairments, which caused at least some pain. (R. 17).

---

[4] Sedentary work requires a claimant to walk and stand no more than one-third of a work day and lift no more than 10 pounds at one time. See § 404.1567 (requiring walking and standing occasionally); Dictionary of Occupational Titles Appendix C, Part IV (Physical Demands—Strength Rating) (defining occasionally as "less than one-third of the time").

As Mr. Kotofski could not return to his past relevant work of longshoreman or checker, ALJ Due proceeded to the fifth step. In this final step, the ALJ must consider whether the claimant is capable of working other jobs available in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(f). The burden of proof shifts from the claimant to the SSA, which must prove that the claimant retains the RFC to engage in an alternative job. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1983). Here, the ALJ found that there were jobs available in significant numbers that Mr. Kotofski could have performed in light of his age (48), high school education, English proficiency, lack of transferable job skills, and RFC to perform the full range of sedentary jobs. (R. 17). Thus, the ALJ concluded that Mr. Kotofski was not disabled. (R. 18).

**IV. Standard of Review**

This Court does not conduct a de novo review of the case. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979) ("This Court does not find facts or try the case de novo when reviewing disability determinations."). Rather, this Court must determine whether the ALJ supported his decision with "substantial evidence" using the appropriate legal standard. 42 U.S.C. 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Blalock

v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence" is more than a "mere scintilla of evidence but may be somewhat less than a preponderance." Blalock, 483 F.2d at 776 (citations omitted). See also Perales, 402 U.S. at 401. This Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays v. Sullivan, 909 F.2d 1453, 1456 (4th Cir. 1990). If the ALJ's decision was "reached by means of an improper standard or misapplication of the law," this Court will not adopt his decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, if the ALJ did not support his decision by "substantial evidence," or misapplied the law, this Court may modify, reverse, or remand the ALJ's final decision. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991); Underwood v. Rubicoff, 298 F.2d 850 (4th Cir. 1962).

**V. Discussion**

**Summary**

The record is clear that Mr. Kotofski suffers from non-exertional impairments such as pain in his feet and back and numbness in his feet. However, it is not clear how the ALJ evaluated those impairments and whether they give rise to a cognizable limitation, affecting his ability to do the full

8

range of sedentary work and requiring VE testimony. ALJ Due
failed to adequately explain his reasoning regarding the
credibility of Mr. Kotofski's "symptoms" when determining his
RFC. ALJs are required to evaluate non-exertional limitations
during the RFC determination and support their determinations
with substantial evidence. The ALJ restated some of the non-
exertional limitations that Mr. Kotofski experiences, but the
ALJ did not adequately explain his reasoning as required. He
only performed step one of the required two step analysis of
pain or other symptoms. The ALJ merely concluded:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the
> extent they are inconsistent with the above residual
> functional capacity assessment. (R. 16).

This statement, while possibly correct, is, however, without
supporting factual analysis. The ALJ must explain what, if any,
effect Mr. Kotofski's non-exertional limitations have on his
ability to return either to his former job (step four) or to
other employment available in the national economy (step five).
In doing so, he must consider other factors other than objective
evidence in assessing the credibility of an individual's
statement. SSR 96-7p. While Mr. Kotofski's non-exertional
limitation of chronic pain may indeed be de minimis by itself or

when properly controlled by pain medication, the ALJ has nevertheless failed to explain whether either of these facts, or another combination of facts rising to substantial evidence, supports this determination. It is impossible for this reviewing court to know what the ALJ intended. But it is clear that he failed to explain and document the credibility portion of the required two-part pain analysis.

Because ALJ Due failed to adequately explain his credibility determination, this Court cannot review the decision of the ALJ. The Court cannot know whether the ALJ in applying the grids because no such non-exertional limitation exists or is de minimis. Or, whether the ALJ erred and should have sought VE testimony due to his non-exertional limitation, such as pain or numbness. Consequently, this Court also cannot pass judgment on whether the ALJ should have consulted a Vocational Expert. Accordingly, as more fully discussed below, this court REMANDS this case for reconsideration in light of foregoing.

## Plaintiff's Arguments

On appeal, plaintiff argues two related points. First, that the ALJ failed to make clear findings on the non-exertional impairments of the plaintiff. (Paper No. 28, 4). Second, asserting that the record included non-exertional impairments, that the ALJ erred in relying exclusively on the grids and failed to elicit vocational expert testimony, as required. The

Court agrees on the first point.

> **ALJ Due Failed to Explain His Reasoning Supporting Why Mr. Kotofski's Statements Regarding His Pain and Other Symptoms Were Not Credible.**

On appeal, Mr. Kotofski argues that notwithstanding the government's assertion, the ALJ failed to specifically conclude and explain "that Mr. Kotofski's pain was only relevant upon exertion or that his nonexertional pain limitations were <u>de minimis</u>." Paper No. 28 at 3. In general, ALJs have a duty to explain their assertions and support them with evidence from the record. <u>Cook v. Heckler</u>, 783 F.2d 1168, 1174 (4th Cir. 1986) (holding that the ALJ "must make a specific and well-articulated finding as to the effect of the combination of a claimant's impairments."). An ALJ's failure to explain would make the court's function on administrative appeal meaningless because, without such explanation, it would be impossible to ascertain whether the ALJ supported his assertions with substantial evidence. <u>Arnold v. Secretary</u>, 567 F.2d 258, 259-60 (4th Cir. 1977) (holding that courts may not hold conclusory and unsupported statements as being rational and thus supported by "substantial evidence;" such a holding would "approach[] an abdication" of the court's duty to review the record). In <u>Arnold</u>, the Fourth Circuit held that a "bare recital" of a record replete with conflicting evidence of Black Lung Disease without the ALJ's explanation of his determination and why

certain pieces of evidence were considered more probative than others made the court's review duty impossible. <u>Arnold</u>, 567 F.2d at 259-60. Thus, whenever, the ALJ makes a determination, he must explain that determination by applying the law to the facts before him in the record. <u>Id.</u>

This general duty to explain extends to the ALJ's analysis of the RFC. Here, of course, because the calculation of the RFC would change the outcome of the case, the failure to explain cannot be deemed harmless error. <u>Bloom</u>, 2009 WL 2449877, at *21. The RFC assists the ALJ in determining whether the claimant retains enough vocational capacity to return to work. SSR 96-8p. Consistent with the overall duty to explain, to establish the RFC, ALJs must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. § 404.1545(a) (ordering ALJ to consider entire record); 96-8p (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities); 20 C.F.R. § 404.1545(b) (ordering consideration of physical limitations, the definition of which mirrors exertional limitations); <u>Id.</u> §404.1545(d) (defining "other abilities" as nonexertional limitations). See also, Richard C. Ruskell, <u>Social Security Disability Claims Handbook</u>, § 2:28 (May 2010) ("[o]ther impairments that will be considered are non-exertional limitations") and 404.1545(a)(1)

("Your [RFC] is **the most you can still do despite these limitations**.") (emphasis added). Limitations come in two types, "exertional" and "non-exertional." Exertional limitations involve physical actions that engage the claimant's muscles in the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a(b). Exertional limitations can be objectively verified: the ALJ can observe without much trouble whether a claimant has trouble standing, walking, carrying, or pulling, etc. Non-exertional limitations involve all other limitations that are not exertional—that is, any limitation that does not affect the ability to sit, stand, walk, lift, carry, push, or pull. SSR 83-10. Examples of non-exertional limitations include: (1) difficulty functioning because of nerves, anxiousness, or depression; (2) difficulty maintaining attention or concentrating; (3) difficulty understanding or remembering instructions; (4) difficulty seeing or hearing. 20 CFR 404.1569a(c)(i)-(iv). Non-exertional limitations can also "affect the abilities to reach; to seize, hold grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop); or bend both the spine and the legs (crouch)." SSR 85-15. Thus, when calculating RFC, the ALJ must take all factors, including the existence of non-exertional limitations, into account and explain his conclusions with

substantial evidence—the ALJ may not conclusively state the RFC. <u>Cook</u> 783 F.2d at 1174.

In establishing the RFC, ALJ Due failed to explain the following statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (R. 15).

While the government reads this statement as a finding that the plaintiff either had no non-exertional limitation or had only a <u>de minimis</u> limitation, that is not a fair reading. Moreover, it is highly conclusory - even mysterious - in its meaning. First, the ALJ never defines what "symptoms" means. (<u>Id.</u>). He may be referring to either "limitations" or "impairments." (<u>See</u> 20 C.F.R. § 404.1569a; SSR 85-15). In any event, the ALJ used the term "symptom" without any definition of what the symptoms are in this particular case. (R. 15). The "symptoms" might also refer to pain, numbness, or other reported problems that are in the record. <u>See</u>, <u>e.g.</u>, (R. 97) (noting ankle pain); (R. 101) (noting decreased sensation in feet); (R. 107) (noting calf pain). While it is unknown what precisely the ALJ considered to be Mr. Kotofski's "symptoms," a review of the record reveals that at least one of them is pain. <u>See</u> (R. 97, 99, 105, 113,

116-131); Compare Paper No. 13 at 10 (arguing that Mr. Kotofski experienced pain as a non-exertional limitation); Paper No. 21 at 9 (arguing against pain as a non-exertional limitation in Mr. Kotofski's case, but acknowledging that Mr. Kotofski experiences pain).  The ALJ is required to make a well-articulated finding, Cook, 783 F.2d at 1174, not a recitation of facts and then a bare conclusion leaving the court to wonder what precisely the ALJ meant.  Arnold, 567 F.2d at 259.  Thus, on this basis alone, the ALJ fails to discharge his duty to explain.

Second, the ALJ never explains or supports with relevant facts the conclusion that Mr. Kotofski's statements are not credible "to the extent they are inconsistent with the above residual functional capacity assessment."  The ALJ's mention of credibility appears to be a reference to the second part of the two-part analysis of pain.  (R. 15) ("the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.").  The ALJ, however, does not explain this credibility determination whatsoever but instead merely concludes that Mr. Kotofski's statements about his symptoms are not credible because they are inconsistent with the above RFC determination - a circular and unhelpful statement devoid of factual context.  (R. 16).

As stated, demonstration of pain as a non-exertional

limitation involves a two part inquiry. [5]  First, the record must

contain objective evidence of an impairment, such a disease or

other medically recognized condition, that could cause pain.

Id.  Second, the claimant must subjectively report and the ALJ

must find credible that the pain rises to a non-exertional

limitation. Id. (holding that "while there must be objective

medical evidence of some condition that could reasonably produce

the pain [causing a non-exertional limitation], there need not

be objective evidence of the pain itself or its intensity" to

establish the existence of a non-exertional limitation).

Because of the inability to get inside one's head to determine

if a claimant actually experiences the pain he represents to the

ALJ, determining the credibility of a claimant's statements

regarding pain is critical.  In determining credibility, the ALJ

must take the following factors into account:  1) an

individual's daily activities, 2) location duration, frequency,

and intensity of the individual's pain; 3) factors that

precipitate and aggravate the symptoms; 4) type, dosage,

effectiveness, and side effects of any medication the individual

takes or has taken to alleviate pain or other symptoms; 5)

treatment, other than medication for relief; 6) measures other

---

[5] The record contains evidence of other possible non-exertional
limitations.  See, e.g., (R. 141) (noting numbness).  As pain was a
principal issue on the briefs, Paper No. 13 at 9, this Court will
concentrate on that issue.  The ALJ, on remand, however, should
consider and discuss the reports of numbness in his analysis.

than treatment the individual uses to relieve pain; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p. <u>See also</u> <u>Hines v. Barnhart</u>, 453 F.2d 559, 565 (adopting SSR 96-7 as the Fourth Circuit standard); <u>Id.</u> at 566 (criticizing ALJ for not taking into account claimant testimony that he had "pain 'mostly all the time' and that 'taking [medication] makes it feel better and it's not really gone'").[6] An ALJ may not reject a claimant's claims of the intensity and persistence of his pain solely because the available objective evidence does not substantiate the claimant's statements. <u>See</u> 20 C.F.R. § 404.1529(c)(2). <u>See also</u> SSR 96-7p (noting that ALJs must make holistic credibility determinations that include all information in the record). Thus, when determining whether pain rises to a non-exertional limitation rather than a mere annoyance, ALJs must explain using substantial evidence the existence or absence of objective evidence of pain and make a

---

[6] The Fourth Circuit's position that medication's efficacy and side-effects is but one factor to consider when evaluating pain is in accord with other circuits. <u>Moreno v. Astrue</u>, 366 Fed. Appx. 23, 28 (11th Cir. 2010) (listing side-effects of medication as one factor to consider in evaluating subjective evidence); <u>Kelley v. Callahan</u>, 133 F.2d 583, 588-89 (8th Cir. 1998) (holding that evidence of taking medication is not dispositive but that "claimant's allegations of disabling pain may . . . be discredited by evidence that the claimant received minimal medical treatment and/or has taken only occasional pain medication."); <u>Simila v. Astrue</u>, 573 F.3d 503, 517 (7th Cir. 2009) (same); <u>Korencia v. Astrue</u>, 346 Fed. Appx. 141, 142 (9th Cir. 2009) (same); <u>Cruz v. Commis. Of Soc. Sec.</u>, 244 Fed. Appx. 475, 481 (3d. Cir. 2007) (same).

determination regarding subjective evidence regarding such pain, taking into account a contextualized view of the patient's statements when making credibility determinations.

Mr. Kotofski provided both objective and subjective evidence that he suffered from a non-exertional limitation, pain. First, there is ample objective evidence that Mr. Kotofski's impairments of diabetes mellitus, ankle pathology, back pathology and neuropathies of the feet could cause such pain but, again, there is no analysis to back up the ALJ's conclusion. (R. 14). Dr. Mark Posner, Mr. Kotofski's treating physician, reported on numerous occasions that Mr. Kotofski was in his care for "chronic pain" caused by a series of ankle surgeries and diabetes. See (R. 97, 105, 113). All of the progress notes from the Downtown Baltimore Pain Center reported that Mr. Kotofski suffered from ongoing chronic pain to his left ankle as a result of a these same maladies. (R. 116–131). Dr. Osei-Boateng also directly linked Mr. Kotofski's previous injuries with his constant pain. (R. 99). Finally, ALJ Due himself found, after citing but not analyzing some of the evidence recited directly above, that Mr. Kotofski's "medically determinable impairments could reasonably be expected to cause the alleged symptoms [of non-exertional pain]." (R. 16). Thus, there is substantial objective evidence that Mr. Kotofski's pain could cause a non-exertional limitation.

Second, the record cites numerous examples of Mr. Kotofski's complaints of chronic pain and provides evidence of the SSR 97-7p factors, but while the ALJ acknowledged that a credibility determination was required at this step, he failed to explain why he did not include any of these facts or evaluate them in light of the multi-factor credibility analysis as outlined in SSR 96-7p. (R. 15). At the hearing, Mr. Kotofski testified that he experienced "[c]onstant" pain in his left ankle and intermittent pain in his lower thighs. (R. 171). This provides at least some evidence about the location and duration of Mr. Kotofski's pain. SSR 96-7p. Each Doctor's report relied upon by ALJ Due notes Mr. Kotofski's complaints of chronic pain. See (R. 97) (Dr. Posner); (R. 99) (Dr. Osei-Boateng); (R. 107) (Dr. Ross), and (R. 142) (Dr. Saluja).[7] There is other evidence, however, the Mr. Kotofski's pain was well-controlled with medication, yet another factor which the ALJ failed to take into account under SSR 96-7p. See (R. 105, 113). While the ALJ mentioned medication in his opinion, there is no analysis conducted in conjunction with that statement. (R. 16). The ALJ similarly failed to consider other SSR 96-7p factors, such as evidence regarding Mr. Kotofski's daily activities and

_____

[7] Dr. Scannelli, a state medical doctor, did not agree with the other doctor's assessments or chronic pain. (R. 103). As ALJ Due did not accord any weight to this opinion because the "objective evidence clearly reveals limitations with standing and walking," (R. 16) this Court agrees with the ALJ and will not consider this opinion. [FIX].

factors that precipitate and aggravate his pain symptoms. (R. 168) (daily activities); (R. 174) (driving a 5-speed manual transmission would aggravate his ankle pain); (R. 167) (noting that pain may intensify with increased physical activity). But none of these facts, or others located in the record, are discussed or even cited by ALJ Due, beyond the statement that the ALJ carefully considered "the entire record." (R. 15).

Where a claimant self-reports non-exertional limitations and his reports are coupled with objective medical evidence, the ALJ must take those reports into account when calculating RFC. Walker, 889 F.2d at 49. Here, the record contains both objective and subjective evidence of a non-exertional limitation, pain. From the ALJ's opinion, it is unclear what weight this pain limitation was given. (R. 16). The ALJ has both a duty to include non-exertional limitations in the calculation of the RFC and explain his findings by analyzing substantial evidence. See 20 C.F.R. § 404.1545(a) (noting that limitations must be taken into account); Cook, 783 F.2d at 1174 (articulating the general duty to explain). Neither of these requirements were satisfied in the ALJ's opinion. Thus, the ALJ failed to articulate and support with substantial evidence his blanket statements regarding Mr. Kotofski's RFC. To be clear, the ALJ may nevertheless find Mr. Kotofski's pain to be de minimis, controlled with medication, or otherwise not credible, but he

must analyze and support his conclusions with substantial evidence in the record. On remand, the ALJ should determine and explain whether Mr. Kotofksi's pain rises to a non-exertional limitation or not, and if so, whether greater than de minimis. In furtherance of that inquiry the ALJ should assess the credibility determination using the rule articulated above, including a discussion of what, if any, effect medication has on his ability to function.

> **As the ALJ Has Failed to Accurately Explain and Apply the Law to the Facts in the Record, Mr. Kotofski's Argument Regarding Step Five is Not Yet Ripe.**

Mr. Kotofski also argues on appeal that the ALJ improperly and exclusively applied the grids when making his determination at step five. Paper No. 13 at 7; Paper No. 28 at 2. Such an inquiry is not yet ripe for consideration before this court. An adequately explained determination regarding the RFC and a proper evaluation at steps four and five in light of such RFC is necessary before this or any other court can pass judgment on the analysis conducted by the ALJ at steps four and five. For instance, if the ALJ concludes that Mr. Kotofski's pain or numbness is de minimis, incredible, or well-controlled with medication, then exclusive reliance on the grids would be appropriate at step five. Wilson v. Heckler, 743 F.2d 218, 222 (4th Cir. 1984) (citing Gary v. Schweiker, 712 F.2d 921, 931 (4th Cir. 1983)) ("[W]hen a claimant suffers from both

exertional and nonexertional limitations, the grid tables are not conclusive [and] may only serve as guidelines."); accord Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  If he cannot make such a determination, then he must consult a Vocational Expert ("VE") to determine how much, if at all, the ALJ's RFC determination should be adjusted in light of the VE's expert opinion.  Walker, 889 F.2d at 50 (remanding case with instructions to ALJ to consult with VE to prove that claimant had RFC to perform jobs available in the national economy); SSR 83-14 (instructing to use the grids as a framework and VEs for "more complex cases").[8]  Until a robust analysis regarding RFC is conducted, however, this Court cannot properly evaluate these questions.

**Conclusion**

The ALJ erred.  The bare conclusion that Mr. Kotofski's statements lack credibility because they are inconsistent with "the above residual functional capacity assessment" does not discharge the duty to explain.  Until the ALJ supports his conclusion with substantial evidence, this Court's analysis cannot proceed.  Therefore, this Court hereby **REMANDS** this case

---

[8] This Court cautions ALJs to 'resist the temptation to dispense with vocational expert testimony in favor of his own experience."  Wilson, 617 F.2d at 1054 (holding that remand was appropriate when a claimant with cancer and severe depression made a prima facie case that he could not return to his old job as an insurance salesman and when the ALJ relied solely on the evidence in the record to conclusively state that the claimant could perform night desk man and low-impact maintenance jobs).

to the Commissioner for further proceedings consistent with this opinion.


Date: 9/14/10 _____                    _____/s/_____
                                          Susan K. Gauvey
                                          United States Magistrate Judge